## The Hanover Fire Insurance Company v. Catharine Mannasson.

*Insurance: Silver forks and spoons: Plate.*   Silver forks and tea and table spoons are not included in the term "*plate*" so as to be excluded from a policy of insurance by a clause excluding "money, bullion, jewels, plate and watches" unless particularly specified.

*Insurance: Proofs of loss: Fraud: Mistake: Good faith.*   Where one who has with full knowledge made a claim under oath for a loss which has not been sustained, and presented it for payment, proposes to show that this was done without any intent to defraud the party from whom payment was sought, the evidence offered for the purpose must have a clear tendency to show good faith.

HANOVER FIRE INSURANCE CO. v. MANNASSON.

*Proofs of loss: Directions of agent of insurers: Evidence.* And one who has. thus included in proofs of loss under an insurance policy property he had shipped away and which he knew had not been destroyed, does not excuse the act by showing that the proofs were made out by the agent of the insurer, who directed him to put into the proofs all he had, as there was a deduction to be made by the company any way, and that on his suggesting that he wished to correct the proofs, that he had articles not mentioned in them which he wished to mention, such agent had replied, "It will be 'time when you make the deduction to fix that all right;'" such evidence, in the absence of any showing that the agent knew any such property had been sent away, has no tendency to prove that he directed the insured to put the same into the proofs.

*Proofs of loss: False statement: Directions of agent of insurers: Good faith..* Whether or not the fact that the agent of the insurer directed the insured to, include in the proofs articles which had not been destroyed would under any circumstances excuse the insured for so doing, it certainly would not in a case where the showing was not clear that he followed such advice innocently and without intent to defraud.

*Heard April 30. Decided May 5.*

Error to Wayne Circuit.

*D. C. Holbrook,* for plaintiff in error.

*H. B. Brown,* for defendant in error.

COOLEY, J.

The defendant in error brought suit in the court below to recover a loss by fire which was insured against by the the plaintiff in error. The policy covered household furniture, beds, bedding, wearing apparel, and family stores in a dwelling house at Bay City. One clause in the policy declared that the company was not to be liable for the loss of "money, bullion, jewels, plate and watches, unless particularly specified in the policy," and another that "all fraud or attempt at fraud or false swearing on the part of the assured" should cause a forfeiture of all claim under the policy. Among the articles alleged to have been destroyed were certain silver forks and tea and table spoons, which were not particularly specified in the policy, and which the insurance company claimed were excluded therefrom in the exclusion of plate. This claim we think not well founded. The term *plate* is not commonly understood to embrace articles of ordinary use, whatever may be the

material, but only the more pretentious articles which are displayed on the tables of the wealthy or ostentatious, and which are to be considered rather as articles of luxury than as household furniture.

The most important question in the case arises under the cluase regarding fraud and false swearing. The policy bore date January 2, 1868, and was obtained for the plaintiff by Richard Mannasson, her husband. Two days afterwards he took from the house twenty-six pillows and twenty-six pillow slips, which constituted a part of the property insured, boxed them up, and sent them to Huron Station in Wayne county, directed to one Baumeister, and they were forwarded as directed and received by the plaintiff, who had them in her possession when the fire took place. This event occurred on the 20th of the same month. Richard Mannasson thereupon made on his own oath the preliminary proofs of the loss, in which claim was made for compensation for the very pillows and pillow slips which he had thus sixteen days before boxed up and sent off.

For the purpose of basing upon it an argument to the jury that this false swearing of Richard Mannasson was not done with intent to defraud, the plaintiff put him upon the stand, and he testified that the proof of loss was made out by the agent of the company at Bay City, who told him to "put into said proof of loss all the plaintiff had; that there was a deduction to be made by the company any way; and I told him that I wanted to correct the same (after he had told me to put in all we had); I had articles that were not mentioned in the proof of loss that I wished to mention something about; he said it will be time when you make the deduction to fix that all right then; and instead of doing so he took me to the office where I was sworn."

The evident design of this evidence was to lead the jury to infer that this false claim against the insurance company was made out and a false oath taken to it under the direction of the agent. And the judge would then be asked

to charge the jury, as he did in fact, that if the agent told Mannasson to put the articles thus sent off into the proofs of loss, then the plaintiff would not be debarred from a recovery.

We think this evidence was erroneously received. It did not tend to prove that the agent gave any such direction. Mannasson did not assume to testify that the agent was aware that any of the property had been sent away, and the words put into his mouth are perfectly consistent with his entire ignorance of that fact. And if he was ignorant of it, his remark had no relevancy to this controversy. Every reason of fairness requires us to put an honest construction upon the agent's words if they are reasonably susceptible of it; and we think they not only are so in this instance, but that they most naturally bear the construction that the articles he advised Mannasson to put in the proofs of loss were not all the articles the plaintiff had any where, and every where, whether insured or not, or lost or not, but only such as were embraced by the policy and included in the loss. It was the loss under the policy, the parties were talking about. And though Mannasson would have us infer he had signified to the agent a purpose to make corrections, his language rather applies to those articles not mentioned than to any wrongfully included, and has no tendency to excuse what *prima facie* was a fraudulent act on his part.

When a person with full knowledge has made claim for a loss which has not been sustained, and then made oath to it, and presented it for payment, if he proposes to show that all this was done without any intent to defraud the party from whom payment was sought, the evidence offered for the purpose ought to have some manifest tendency to show good faith. This evidence had no such tendency whatever. It was at least as consistent with the perjury and fraud which were charged upon Mannasson, as it was with good faith, and indeed more so, for it admitted the false claim and false oath, and failed to show the agent's

knowledge of the falsehood.    The judgment should there-
fore be reversed and a new trial ordered.

Whether the fact that the agent directed articles to be
embraced in the proofs which were not destroyed would
have excused the plaintiff, would perhaps depend upon other
facts not disclosed by this record.    It is possible that there
may be cases in which an insured party would follow such
advice innocently, but it is difficult to conceive that a per-
son in his right mind could make such a claim and take
such an oath in good faith ;  and if he did it in bad faith,
the agent's advice or connivance would constitute no excuse
whatsoever.    It would only prove that there were two per-
sons engaged in the fraud instead of one.

The other Justices concurred.